## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AARON L. BROWN, PETER A. YOUNG, ) <br> NINA DANIEL, RUSSELL S. CRABTREE, ) <br> KIMBERLY L. NESBITT and ERIN N. ) <br> WHEELER, individually and on behalf of all ) <br> others similarly situated, ) <br> ) <br>                     Plaintiff, ) <br>         v. ) <br> ) <br> THE MITRE CORPORATION, THE ) <br> BOARD OF TRUSTEES OF THE ) <br> MITRE CORPORATION, THE ) <br> INVESTMENT ADVISORY COMMITTEE ) <br> OF THE MITRE CORPORATION and JOHN ) <br> DOES 1-30. ) <br> ) <br> Defendants. ) | **CIVIL ACTION NO.: 1:22-cv-10976-DJC** |

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
## UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS
## ACTION SETTLEMENT, APPROVAL OF FORM AND MANNER
## OF SETTLEMENT NOTICE, AND SCHEDULING OF A FAIRNESS HEARING

**TABLE OF CONTENTS**

I.     INTRODUCTION ...................................................................................................1

II.    BACKGROUND ....................................................................................................2

    A.    Procedural History ....................................................................................2

    B.    Claim for Relief .......................................................................................3

    C.    Discovery ..................................................................................................4

    D.    Settlement Negotiations ............................................................................5

III.    THE PROPOSED SETTLEMENT .......................................................................5

IV,    THE PROPOSED SETTLEMENT SHOULD BE PRELIMINARILY
    APPROVED ...........................................................................................................6

    A.    Legal Standard .........................................................................................6

    B.    The Settlement Is Within the Range of Fairness, Reasonableness,
        and Adequacy and Also Satisfies FED. R. CIV. P. 23(e)(2) ....................7

        1.    The Settlement is the Product of Arm's Length Negotiations
            Between Experienced Counsel .....................................................8

        2.    The Proposed Class was Adequately Represented by Plaintiffs and
            Class Counsel...............................................................................9

        3.    The Settlement Provides Significant Relief to Class Members
            Through an Effective Distribution Method and Treats Class
            Members Equitably.....................................................................10

        4.    The Merits of Plaintiffs' Case and Complexity and Expense of
            Further Litigation Weigh in Favor of the Settlement.................11

        5.    The terms of the Proposed Attorneys' Fees, Including Timing of
            Payment is Reasonable ..............................................................12

V.    THE PROPOSED NOTICE PLAN SHOULD BE APPROVED.....................13

VI.    THE COURT HAS PREVIOUSLY CERTIFIED A CLASS..........................14

VII.    CONCLUSION....................................................................................................15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Abbott v. Lockheed Martin Corp*.,
No. 06-cv-701-MJR-DGW, 2015 WL 4398475 (S.D. Ill. July 17, 2015) ....................................12

*Bezdek v. Vibram USA Inc.*,
79 F. Supp. 3d 324, 348 (D. Mass. 2015),
*aff'd*, 809 F.3d 78 (1st Cir. 2015) ...................................................................................................9

*Beesley v. Int'l Paper Co.*,
No: 06-cv-03-DRH-CJP, 2014 WL 375432 (S.D. Ill. Jan. 31, 2014)...........................................12

*Briana Wright v. S. New Hampshire Univ.*,
No. 20-cv-609-LM, 2021 WL 1617145 (D.N.H. Apr. 26, 2021) ...................................................8

*Brotherston, et al. v. Putnam Investments, LLC, et al.*,
No. 1:15-cv-13825-WGY (D. Mass. Apr. 6, 2021) .....................................................................12

*Castro v. Sanofi Pasteur Inc.*,
No. 11-cv-7178-JMV-MAH, 2017 WL 4776626 (D.N.J. Oct. 23, 2017) ....................................10

*City P'ship Co. v. Atl. Acquisition Ltd. P'ship*,
100 F.3d 1041 (1st Cir. 1996)........................................................................................................8

*In re Delphi Corp. Sec., Derivative & ERISA Litig.*,
248 F.R.D. 483 (E.D. Mich. 2008) ..............................................................................................11

*Diaz v. BTG Int'l Inc.*,
No. 19-cv-1664-JMY, 2021 WL 2414580 (E.D. Pa. June 14, 2021) ......................................8, 12

*In re Global Crossing Securities and ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y 2004) ..................................................................................................11

*Greenspun v. Bogan*,
492 F.2d 375, 382 (1st Cir.1974)..................................................................................................14

*Griffin v. Flagstar Bancorp, Inc.*,
No. 10-cv-10610, 2013 WL 6511860, (E. D. Mich. Dec. 12, 2013) ............................................12

*Hill v. State Street Corp.*,
No. 09-cv-12146-GAO, 2015 WL 127728 (D. Mass. Jan. 8, 2015)..............................................14

*Hochstadt v. Boston Scientific Corp.*,
708 F. Supp. 2d 95 (D. Mass. 2010) ............................................................6

*Karpik v. Huntington Bancshares, Inc.*,
No. 17-cv-1153, 2021 WL 757123 (S.D. Ohio Feb. 18, 2021) ....................8

*Krueger v. Ameriprise*,
No. 11-cv-02781-SRN-JSM, 2015 WL 4246879 (D. Minn. July 13, 2015) ..........................11, 12

*Kruger v. Novant Health, Inc.*,
No. 14-cv-208, 2016 WL 6769066 (M.D.N.C. Sept. 29, 2016) ...................12

*LaLonde v. Textron, Inc.*,
369 F.3d 1 (1st Cir. 2004) ...........................................................................11

*In re Lupron Mktg. & Sales Practices Litig.*,
228 F.R.D. 75 (D. Mass. 2005) .....................................................................6

*In re M3 Power Razor Sys. Mktg. & Sales Practice Litig.*,
270 F.R.D. 45 (D. Mass. 2010) .....................................................................6

*McDonald v. Edward Jones*,
791 Fed. Appx. 638 (8th Cir. 2020) ............................................................12

*New England Biolabs, Inc. v. Miller*,
No. 20-cv-11234-RGS, 2022 WL 20583575 (D. Mass. Oct. 26, 2022) .................10, 13

*Roberts v. TJX Companies, Inc.*,
No. 13-cv-13142-ADB, 2016 WL 8677312 (D. Mass. Sept. 30, 2016) ..........8

*In re Schering-Plough Corp. Enhance ERISA Litig.*,
No. 08-cv-1432-DMC-JAD, 2012 WL 1964451 (D.N.J. May 31, 2012).......11

*Spano v. The Boeing Co.*,
No. 06-cv-743-NJR-DGW, 2016 WL 3791123 (S.D. Ill. Mar. 31, 2016)......12

**STATUTES**

28 U.S.C. §§ 1292(b) ...........................................................................................2

28 U.S.C. §§ 1332(D), 1453 AND 1711-1715 ..................................................15

FED. R. CIV. P. 23...............................................................................................15

FED. R. CIV. P. 23(a) ........................................................................................10

FED. R. CIV. P. 23(c)(2)(B)...............................................................................13

FED. R. CIV. P. 23(e)................................................................................................7

FED. R. CIV. P. 23(e)(1).........................................................................................13

FED. R. CIV. P. 23(e)(1)(b)......................................................................................7

FED. R. CIV. P. 23(e)(2)........................................................................................7, 8

FED. R. CIV. P. 23(e)(2)(C)(ii)...............................................................................12

FED. R. CIV. P. 23(e)(3)...........................................................................................7

FED. R. CIV. P. 23(g)...........................................................................................9, 10

FED. R. CIV. P. 23(g)(1)(A)(i)-(iv).........................................................................9

**Other Sources**

Class Action Fairness Act of 2005 ("CAFA").......................................................... 15

Employee Retirement Income Security Act of 1974 ............................................*Passim*

MANUAL FOR COMPLEX LITIGATION (Fourth) § 13.14 (2004) ......................................... 6

## I.        INTRODUCTION

Representative Plaintiffs, Peter A. Young, Nina Daniel, Russell S. Crabtree, Kimberly L. Nesbitt, and Erin N. Wheeler, (together, "Plaintiffs"),[1] participants in the MITRE Corporation Tax Sheltered Annuity Plan ("TSA Plan") and/or the Qualified Retirement Plan ("QRP Plan") (collectively, the "Plans") by and through their undersigned counsel, respectfully submit this Memorandum of Law in support of their motion for preliminary approval of the proposed Settlement of this ERISA[2] class action. Plaintiffs are pleased that after years of hard-fought litigation, they are able to present for preliminary approval a proposed settlement of a cash payment of three million four hundred thousand dollars ($3,400,000.00). The Parties[3] agreed to the proposed Settlement only after vigorous arm's-length negotiations between counsel experienced in ERISA class actions and under the auspices of Hunter Hughes, Esq., a third-party private mediator with extensive experience mediating ERISA actions.

Since the start of the calendar year, the Parties have engaged in mediation efforts and negotiated the specific terms of the Settlement Agreement,[4] and present it now for the Court's preliminary approval. Plaintiffs believe the Settlement is an excellent result, providing a substantial, immediate payment to Settlement Class members and eliminating the risks and costs of continued litigation. Plaintiffs respectfully move this Court for an Order: (1) granting

---

[1] Defendants are The MITRE Corporation ("MITRE"), The Board of Trustees of The MITRE Corporation ("Board"), and the Investment Advisory Committee of the MITRE Corporation ("Committee") (collectively, "Defendants").

[2] Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.*

[3] "Parties" collectively refers to Plaintiffs and Defendants.

[4] The Settlement Agreement itself, attached to the Declaration of Mark K. Gyandoh ("Gyandoh Decl.") as Exhibit 1, has several exhibits. These exhibits are: A (Settlement Notice); B (Plan of Allocation); C (Preliminary Approval Order); and D (Final Order). Undefined terms herein shall have the meaning ascribed to them in the Settlement Agreement.

preliminary approval to the proposed Settlement Agreement, (2) approving the form and manner of providing notice of the Settlement to the proposed Settlement Class (the "Notice Plan"), and (3) scheduling of a Fairness Hearing.

## II.   BACKGROUND

### A.   Procedural History

Plaintiffs commenced this action by filing a complaint on June 22, 2022. *See* ECF No. 1. The Complaint alleged violations of fiduciary duties of prudence imposed by ERISA § 404(a), 29 U.S.C. § 1104(a). *See id*., ¶¶ 105-111. Defendants filed their Motion to Dismiss Complaint on August 23, 2022. *See* ECF No. 16. Plaintiffs filed their Memorandum of Law in Opposition to Defendants' Motion to Dismiss Plaintiffs' Complaint on September 6, 2022. *See* ECF No. 20. Defendants filed their Reply in support of their motion to dismiss on September 30, 2022. *See* ECF No. 26. On March 6, 2023, this Court issued an Order granting in part Defendants' motion to dismiss regarding the dismissal of initial plaintiff, Aaron L. Brown, and denying the motion to dismiss as to all other Plaintiffs and Counts. *See* ECF No. 57.

Defendants filed their Answer to Plaintiffs' Complaint on March 27, 2023. *See* ECF No. 63. Defendants also filed a Motion to Certify Interlocutory Appeal Pursuant to 28 U.S.C. § 1292(b), and their supporting Memorandum. *See* ECF Nos. 68, 69. Plaintiffs filed their Memorandum of Law In Opposition To Defendants' Motion To Certify Interlocutory Appeal on April 19, 2023. *See* ECF No. 70. Defendants filed their Reply on May 4, 2023. *See* ECF No. 73. On June 13, 2023, the Court issued its Order Denying Motion to Certify Interlocutory Appeal. *See* ECF No. 74.

Plaintiffs filed their Motion for Class Certification as well as supporting memorandum and declarations on July 26, 2023. *See* ECF Nos. 75-77. On September 8, 2023, the Parties jointly filed

a Stipulation and Proposed Order regarding class certification. *See* ECF No. 80. The Court adopted the stipulation and certified the Class on September 18, 2023. *See* ECF No. 81. On December 14, 2023, the Parties filed a Joint Motion to Stay Proceedings Pending Mediation. *See* ECF No. 84. The Parties scheduled mediation before third-party mediator Hunter Hughes on March 20, 2024. The Court granted the Parties' joint motion and stayed the proceedings until April 1, 2024. *See* ECF No. 85. On April 2, 2024, the Parties filed a Joint Status Report informing the Court that a settlement had not been reached, but progress toward a settlement was made, and requested that the Court continue the stay until May 16, 2024 so the Parties could continue settlement discussions. *See* ECF No. 89. The Court granted the Parties' request on April 4, 2024. *See* ECF No. 90. The Parties continued to engage in settlement discussions and again requested an extension of the Stay until June 6, 2024. *See* ECF No. 91. On June 6, 2024, the Parties informed the Court that they had reached a settlement in principle. *See* ECF No. 92.

**B.      Claim for Relief**

The Complaint alleges breaches of fiduciary duties of prudence against the Committee for failing to investigate the availability of lower-cost share classes of certain mutual funds in the Plans and overpaying for administrative and recordkeeping costs. *See* Complaint, ¶¶ 105-111. The Complaint also alleges that MITRE and the Board breached their fiduciary monitoring duties by, among other things: (1) failing to monitor and evaluate the performance of the Committee Defendants or have a system in place for doing so, resulting in losses to the Plans; (2) failing to monitor the processes by which the Plans' investments were evaluated, their failure to investigate the availability of lower-cost share classes; and (3) failing to remove Committee members whose performance was inadequate in that they continued to maintain imprudent investments within the Plans, all to the detriment of the Plans and Plans' participants' retirement savings. *See id.*, ¶¶ 112-

118. Defendants denied and continue to deny all of these claims and deny that they ever engaged in any wrongful conduct.

### C.    Discovery

Prior to filing the Complaint, Class Counsel engaged in substantial investigation of the potential claims in this litigation. Class Counsel conducted an in-depth investigation of documents related to the administration of the Plans, including Plaintiffs' individual Plan-related documents, publicly-filed documents regarding the fees and investment returns of the Plans' investments and comparable investment alternatives, the compensation paid to the TSA Plan and QRP Plan recordkeepers, and industry publications regarding prudent fiduciary practices, the competitive market for plan services, and other matters as referenced in the Complaint, including the challenged investments in the TSA Plan and the QRP Plan. *See* Gyandoh Decl. at ¶ 4. On February 15, 2021 and March 25, 2021, as part of its pre-filing investigation, Class Counsel requested Plan-related documents from MITRE pursuant to ERISA § 104(b)(4) and the Plans' administrator provided Class Counsel with Plan-related documents which Class Counsel subsequently analyzed.

Following the Motion to Dismiss decision, the Parties began formal discovery in earnest. On May 8, 2023, Defendants served their Rule 26(a)(1) Initial Disclosures. Gyandoh Decl. at ¶ 20. On June 2, 2023, Plaintiffs served their first set of interrogatories and first request for production of documents. *Id*. at ¶ 22. On December 6, 2023, Defendants served their first set of interrogatories and first request for production of documents. *Id*. at ¶ 7. On January 5, 2024, the Plaintiffs served their objections and responses to defendants' first set of interrogatories to plaintiffs. *Id*. at ¶ 23. Before the March 20, 2024, mediation session, Defendants provided Plaintiffs with important Plan documents that were central to Defendants' defenses and were the subject of Plaintiffs' allegations.

*Id*. at ¶ 24. At every stage of litigation, Plaintiffs engaged with their consulting expert regarding the information gathered from Defendants and other sources. *Id*. at ¶ 24.

### D.    Settlement Negotiations

The Parties first attempted to settle this matter on March 20, 2024, via a voluntary mediation with Hunter Hughes, who is well-versed and experienced in mediating ERISA matters. Gyandoh Decl. at ¶¶ 25-27; *see also* curriculum vitae of Mr. Hughes at https://hunteradr.com/. The Parties exchanged mediation memoranda with each other and Mr. Hughes ahead of the mediation. Although the mediation did not result in a settlement, it did provide each party with an understanding of the other party's respective strengths and weaknesses. The Parties exchanged offers and counter-offers following the conference until ultimately reaching a successful settlement. *Id*. at ¶ 27.

During mediation Plaintiffs focused on the recordkeeping claim of their Complaint because it overlaps with the lower share class claim of the Complaint.  During negotiations and the mediation, Plaintiffs were provided information that led them to revise their damages calculations to a range of $6 million (using $30 as a reasonable recordkeeping fee) to $7 million (using $35 as a reasonable recordkeeping claim).  Gyandoh Decl. at ¶ 27.  Accordingly, this Settlement of $3,400,000.00 represents a recovery of 57% of estimated damages at the high end (meaning $6 million) and 49%  (meaning $7 million). *Id*. at ¶ 29.

## III.    THE PROPOSED SETTLEMENT

The Settlement provides Defendants and/or their insurer will pay a total maximum amount of $3,400,000.00 into a Qualified Settlement Fund to be allocated to Class Members pursuant to a

Court-approved Plan of Allocation.[5] *See* Gyandoh Decl. at ¶ 29. In exchange, Plaintiffs and the

Plan will dismiss their claims, as set forth more fully in the Settlement Agreement. The Settlement

Agreement also proposes to allocate no more than $1,133,220.00 (33 1/3% of the Gross Settlement

Amount) for the payment of attorneys' fees, and Plaintiffs' Case Contribution Awards of no more

than $7,500 per Plaintiff. *See* Gyandoh Decl. at ¶ 33. Both of these awards are subject to Court

approval.

## IV.    THE PROPOSED SETTLEMENT SHOULD BE PRELIMINARILY APPROVED

### A.    Legal Standard

Settlement approval involves two stages: "First, the judge reviews the proposal

preliminarily to determine whether it is sufficient to warrant public notice and a hearing. If so, the

final decision on approval is made after the hearing." *Hochstadt v. Boston Scientific Corp.*, 708 F.

Supp. 2d 95, 106-07 (D. Mass. 2010) (citing MANUAL FOR COMPLEX LITIGATION (Fourth)

§ 13.14 (2004)). At the preliminary approval stage, courts "examine the proposed settlement for

obvious deficiencies before determining whether it is in the range of fair, reasonable, and

adequate." *In re M3 Power Razor Sys. Mktg. & Sales Practice Litig.*, 270 F.R.D. 45, 62 (D. Mass.

2010). "Approval is to be given if a settlement is untainted by collusion and is fair, adequate, and

reasonable." *In re Lupron Mktg. & Sales Practices Litig.*, 228 F.R.D. 75, 93 (D. Mass. 2005). The

ultimate fairness determination is left for final approval, after class members receive notice of the

settlement and have an opportunity to be heard.

Further, Rule 23(e) states that, at the preliminary approval stage, the court must determine

whether it "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the

---

[5] The Plan of Allocation, attached to the Settlement Agreement as Exhibit B, is premised on calculating a Plan participant's *pro rata* distribution based upon the individual's balances in the Plan during the Class Period.

class for purposes of judgment on the proposal." FED. R. CIV. P. 23(e)(1)(B). Rule 23(e)(2), in

turn, specifies the following factors the court must ultimately consider at the final approval stage

in determining whether a settlement is "fair, reasonable, and adequate":

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
>> (i) the costs, risks, and delay of trial and appeal;
>>
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>>
>> (iv) any agreement required to be identified under Rule 23(e)(3)[6]; and
>
> (D) the proposal treats class members equitably relative to each other.

FED. R. CIV. P. 23(e)(2). As discussed *supra*, the Court previously certified this litigation as a class

action, designated Plaintiffs as class representatives, and designated Capozzi & Addler, P.C.

("Capozzi Adler") as Class Counsel.

### B.   The Settlement Is Within the Range of Fairness, Reasonableness, and Adequacy and Also Satisfies FED. R. CIV. P. 23(e)(2)

As discussed below: (1) the settlement was negotiated at arm's-length by experienced

counsel with the assistance of an experienced mediator after significant litigation; (2) the class was

---

[6] Rule 23(e)(3) requires that "[t]he parties seeking approval must file a statement identifying any agreement made in connection with the proposal." FED. R. CIV. P. 23(e)(3). There are no agreements, other than the Settlement Agreement itself, in this case.

adequately represented by the Plaintiffs and Class Counsel; and (3) the relief provided is adequate and equitable to all class members. Accordingly, this Court should grant preliminary approval of the Settlement and authorize notice to the Settlement Class.

### 1. The Settlement is the Product of Arm's-Length Negotiations Between Experienced Counsel

A proposed class action settlement enjoys a "presumption in favor of the settlement" if "sufficient discovery has been provided and the parties have bargained at arms-length." *City P'ship Co. v. Atl. Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir. 1996). The Parties voluntarily negotiated the settlement with the assistance of a neutral, experienced mediator. During mediation, the Parties exchanged damages scenarios and argued for their respective sides before finally reaching an agreement. Hence, the resulting proposed Settlement is the product of arm's-length, informed negotiations. *See Briana Wright v. S. New Hampshire Univ.*, No. 20-cv-609-LM, 2021 WL 1617145, at *7 (D.N.H. Apr. 26, 2021) ("The court notes, first, that the presumption of reasonableness applies here. The record establishes that counsel for the parties negotiated the Agreement at arm's length, at times with the assistance of an experienced and neutral mediator, following a thorough investigation and mutual exchange of evidence."); *Roberts v. TJX Companies, Inc.*, No. 13-cv-13142-ADB, 2016 WL 8677312, at *6 (D. Mass. Sept. 30, 2016) ("[T]he participation of an experienced mediator . . . also supports the Court's finding that the Settlement is fair, reasonable, and adequate.").

Moreover, both Parties have retained counsel with experience and knowledge of ERISA and the claims at issue. Preliminary approval is warranted because "Class Counsel are skilled in class actions and ERISA litigation, and their recommendation that the Court should approve the Settlement is entitled to some deference." *Karpik v. Huntington Bancshares, Inc.*, No. 17-cv-1153, 2021 WL 757123 at * 6 (S.D. Ohio Feb. 18, 2021); *see also Diaz v. BTG Int'l Inc.*, No. 19-cv-

1664-JMY, 2021 WL 2414580, at *8 (E.D. Pa. June 14, 2021) (appointing the undersigned as settlement Class Counsel in an ERISA case and stating that we "appear well-qualified to weigh the risks and benefits of continued litigation as compared to the relief provided by the Settlement."). Likewise, counsel for Defendants, Morgan, Lewis & Bockius LLP, are one of the leading ERISA class actions defense firms in the country[7] and do not oppose the settlement. In light of the forgoing, the Parties were clearly able "to make an intelligent judgment about settlement." *Bezdek v. Vibram USA Inc.*, 79 F. Supp. 3d 324, 348 (D. Mass. 2015), *aff'd*, 809 F.3d 78 (1st Cir. 2015).

### 2. The Proposed Class was Adequately Represented by Plaintiffs and Class Counsel

To appoint Class Counsel, Rule 23(g) directs consideration of: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources counsel will commit to representing the class." FED. R. CIV. P. 23(g)(1)(A)(i)-(iv).

Class Counsel, Capozzi Adler, has done substantial work, has experience litigating ERISA class actions and complex matters, and has committed ample resources to prosecute this matter. *See* Gyandoh Decl. ¶¶ 38-42. Thus, Plaintiffs retained highly qualified and experienced attorneys in satisfaction of Rules 23(a) and 23(g). Indeed, Class Counsel has successfully defended against Defendants' Motion to Dismiss, obtained class certification, and conducted diligent discovery. Capozzi Adler will continue to ardently advocate for the Class.

---

[7] *See* www.morganlewis.com/services/erisaemployee-benefits-litigation. Last accessed August 2, 2024.

Additionally, the Settlement Class Members also have been adequately represented by the Plaintiffs. Each Plaintiff was a former employee of MITRE, and participant in the Plans. *See* Declaration of Peter A. Young ("Young Decl."), ¶ 4; Declaration of Nina Daniel ("Daniel Decl."), ¶ 4; Declaration of Russell S. Crabtree ("Crabtree Decl."), ¶ 4; Declaration of Kimberly L. Nesbitt ("Nesbitt Decl."), ¶ 4; and Declaration of Erin N. Wheeler ("Wheeler Decl."), ¶ 4. Throughout the course of this litigation, each Plaintiff has regularly conferred with their attorneys at Capozzi Adler regarding litigation updates and the events surrounding the settlement negotiations, and will continue to discuss in more detail the proposed Settlement. *See* Young Decl., ¶ 6; Daniel Decl., ¶ 6; Crabtree Decl., ¶ 6; Nesbitt Decl., ¶ 6; Wheeler Decl., ¶ 6. The Plaintiffs have also gathered relevant documents and provided them to their attorneys throughout the litigation. *Id. a*t ¶ 6.

### 3. The Settlement Provides Significant Relief to Class Members Through an Effective Distribution Method and Treats Class Members Equitably

The Settlement Agreement and Plan of Allocation fashion both reasonable and immediate relief for the Class. "The plan for allocating settlement proceeds, like the settlement itself, should be approved if it is fair, reasonable and adequate." *New England Biolabs, Inc. v. Miller,* No. 20-cv-11234-RGS, 2022 WL 20583575, at *4 (D. Mass. Oct. 26, 2022). The distribution plan allocates amounts to each participant on a *pro rata* basis, in proportion to the sum of that Class Member's Balance in the Plans as compared to the sum of the Balance for all Class Members in the Plans. *See* Gyandoh Decl., Exhibit 1-B. Courts routinely find that *pro rata* distributions are fair, reasonable, and adequate. *See, e.g., New England Biolabs, Inc*., 2022 WL 20583575, at *4 ("Such a plan of allocation is reasonable and equitable."); *Castro v. Sanofi Pasteur Inc.*, No. 11-cv-7178-JMV-MAH, 2017 WL 4776626, at *7 (D.N.J. Oct. 23, 2017) ("*pro rata* distributions of settlement funds are consistently upheld."). Furthermore, for members with active accounts, "[t]he distribution takes place through the Plan[] so as to realize the tax advantage of investment in the

Plan[]." *In re Schering-Plough Corp. Enhance ERISA Litig.*, No. 08-cv-1432-DMC-JAD, 2012 WL 1964451, *6 (D.N.J. May 31, 2012). The Plan of Allocation is fair, reasonable, and adequate.

      **4.**      **The Merits of Plaintiffs' Case and Complexity and Expense of Further Litigation Weigh in Favor of the Settlement**

The costs and risks of litigating this action further favor approval of the Settlement. Undoubtedly, "ERISA is a complex field that involves difficult and novel legal theories and often leads to lengthy litigation.'" *Krueger v. Ameriprise*, No. 11-cv-02781-SRN-JSM, 2015 WL 4246879, at *1 (D. Minn. July 13, 2015); *see also LaLonde v. Textron, Inc.*, 369 F.3d 1, 6 (1st Cir. 2004) (the First Circuit has described ERISA jurisprudence as an "important and complex area of law" that "is neither mature nor uniform. . ."). This case is no exception. The history of this case spans over two years, with both Parties spending significant costs and time on discovery and motion practice. Without this settlement, the Parties would have to incur further expert, travel, court, and other costs that would both delay, and reduce any recovery for Plaintiffs and the Settlement Class.

Moreover, although Plaintiffs are confident in their case, the potential upcoming summary judgment stage and trial brings real uncertainties for both sides. *See In re Delphi Corp. Sec., Derivative & ERISA Litig.*, 248 F.R.D. 483, 496-97 (E.D. Mich. 2008) ("Plaintiffs admit that risk is inherent in any litigation, particularly class actions. The risk is even more acute in the complex areas of ERISA law."); *In re Global Crossing Securities and ERISA Litig.,* 225 F.R.D. 436, 460 (S.D.N.Y 2004) ("In short, the legal and factual complexities and uncertainties of the ERISA damages case also militate in favor of settlement.").

Here, Plaintiffs' expert estimated damages relating to all of Plaintiffs' claims to be in the range of $6 million to $7 million. Defendants vigorously rejected Plaintiffs' damages analysis, and, if any of their arguments were credited by the Court, it would reduce Plaintiffs' damages

considerably, if not totally. This factor weighs heavily in favor of approval because without this Settlement, Plaintiffs would endure lengthy and expensive litigation at the risk of less or no recovery at all.

> **5.    The terms of the Proposed Attorneys' Fees, Including Timing of Payment is Reasonable**

The Settlement provides for a proposed maximum of 33 1/3% of the Gross Settlement Amount in attorneys' fees to be paid after the Settlement becomes final. Gyandoh Decl. at ¶ 23. This amount is in line with analogous awards in ERISA class action cases and will likely be approved by the Court, so the requirement of Rule 23(e)(2)(C)(ii) will likely be met. *See, e.g., Brotherston, et al. v. Putnam Investments, LLC, et al.*, No. 1:15-cv-13825-WGY (ECF No. 237) (D. Mass. Apr. 6, 2021) (affirming judgment that awarded the class counsel attorneys' fees of 1/3 of the settlement fund); *McDonald v. Edward Jones*, 791 Fed. Appx. 638, 640 (8th Cir. 2020) (affirming judgment that awarded the class counsel attorneys' fees of 1/3 of the settlement fund); *see also, Diaz*, 2021 WL 2414580, at *8 (an analogous ERISA case awarding 33 1/3 percent of the settlement fund); *Kruger v. Novant Health, Inc.*, No. 14-cv-208, 2016 WL 6769066, at *6 (M.D.N.C. Sept. 29, 2016); *Griffin v. Flagstar Bancorp, Inc.*, No. 10-cv-10610, 2013 WL 6511860, at *8, (E. D. Mich. Dec. 12, 2013) (holding that the class counsels' "requested fee is consistent with standard fee awards as a percentage of the fund in ERISA actions which typically award between 30% and 33% on a percentage of the fund fee calculation."); *Spano v. The Boeing Co.,* No. 06-cv-743-NJR-DGW, 2016 WL 3791123, at *4 (S.D. Ill. Mar. 31, 2016); *Abbott v. Lockheed Martin Corp.*, No. 06-cv-701-MJR-DGW, 2015 WL 4398475, at *4 (S.D. Ill. July 17, 2015); *Krueger v. Ameriprise*, 2015 WL 4246879, at *4; *Beesley v. Int'l Paper Co.*, No: 06-cv-03-DRH-CJP, 2014 WL 375432, at *4 (S.D. Ill. Jan. 31, 2014). In short, Plaintiffs' requested fee

award is in line with ERISA fee awards across the Nation and is justified by the complexity and risk of this litigation.

## V.      THE PROPOSED NOTICE PLAN SHOULD BE APPROVED

In addition to reviewing the substance of the Parties' Settlement Agreement, the Court must ensure that notice is sent in a reasonable manner to all class members who would be bound by the settlement. FED. R. CIV. P. 23(e)(1). The "best notice that is practicable under the circumstances" includes individual notice to all class members who can be identified through reasonable effort. FED. R. CIV. P. 23(c)(2)(B). Plaintiffs have selected Analytics LLC ("Analytics") to be the Settlement Administrator. Analytics is highly experienced in class action claims administration. Upon preliminary approval, Analytics will mail, by first class mail, the Court-approved Class Notice to Settlement Class members using addresses from employment records and documents associated with the Plan. Analytics will administer a skip trace and receive updated address information for any notices that are returned for lack of a forwarding address and re-mail the notices to the updated addresses. This type of notice is presumptively reasonable. *See New England Biolabs, Inc.,* 2022 WL 20583575, at *4 ("Notice provided by first class mail is sufficient when the names and addresses of the class members are known."). Additionally, Analytics will establish a settlement website providing Settlement Class members with important case documents, pertinent information, and contact information for the Settlement Administrator, Class counsel, and Defense counsel. Lastly, Analytics will institute a case-specific toll-free number for members to listen to an Interactive Voice Response ("IVR") system or speak with a live agent.

The content of the Notice is also fair, reasonable, and adequate. The Notices include, among other things: (1) a summary of the lawsuit; (2) a clear definition of the Settlement Class; (3) a description of the material terms of the Settlement; (4) a disclosure of the release of claims;

(5) instructions regarding payment to former participants; (6) instructions as to how to object to the Settlement and a date by which Settlement Class Members must object; (7) the date, time, and location of the Final Fairness Hearing; (8) contact information for the Settlement Administrator; (9) information regarding Class Counsel and the amount that Class Counsel will seek in Attorneys' Fees; and (10) information regarding the amount of Case Contribution Awards to be paid from the Gross Settlement Amount. *See* Settlement Agreement, Exhibit A. The Notice is clearly reasonable as it "fairly apprise[s] the prospective members of the class of the terms of the proposed settlement and of the options that are open to them." *Hill v. State Street Corp.*, No. 09-cv-12146-GAO, 2015 WL 127728, at *15 (D. Mass. Jan. 8, 2015) (quoting *Greenspun v. Bogan*, 492 F.2d 375, 382 (1st Cir.1974)) (internal citations omitted).

## VI.    THE COURT HAS PREVIOUSLY CERTIFIED A CLASS

Given that the Court has previously certified a Class, appointed class counsel and class representatives (*see* ECF No. 81), it is unnecessary for the Court to re-evaluate the basis for granting class certification in the first instance, particularly where there is no challenge regarding the appropriateness of a class. The original certification adopted the Parties' Joint Stipulation. *See* ECF No. 81. However, the Parties seek a slightly modified settlement class definition to end the Class Period as of the entry of the Preliminary Approval Order. The prior certified class was defined as follows:

> All persons, except Defendants and their immediate family members, who were participants in or beneficiaries of the MITRE Corporation Tax Sheltered Annuity Plan ("TSA Plan") and/or the Qualified Retirement Plan ("QRP Plan") at any time between June 22, 2016, through the date of judgment (the "Class Period"). *See* ECF No. 81.

> The Settlement Class is defined as:

> All persons who participated in the Plan at any time during the Class Period, including any Beneficiary of a deceased Person who participated in the Plans at any

> time during the Class Period [June 22, 2016 through the date of the Preliminary
> Approval Order], and any Alternate Payee of a Person subject to a QDRO who
> participated in the Plans at any time during the Class Period. Excluded from the
> Settlement Class are Defendants and their Beneficiaries.

Settlement Agreement, Art. 1.45. The Parties believe that ending the Class Period as of the date of

the Preliminary Approval Order, which will occur before Class Notice goes out, allows all

potential Class Members to be sent notice of the Settlement so as to satisfy due process.

Additionally, addressing Class Members who may be subject to a QDRO also adds to the overall

fairness of the Settlement by making sure all potential beneficiaries are accounted for.  The

amended class definition meets the requirements of Rules 23(a) and (b).

Lasty, for purposes of supporting the Settlement and their adequacy as representatives of

the Settlement Class, Class Counsel and Plaintiffs are submitting additional declarations

describing their efforts to date in this litigation.

## VII.    CONCLUSION

The Parties propose the Fairness Hearing be scheduled at least 120 days after entry of the

Preliminary Approval Order in order to provide the Settlement Class with fair notice and the

opportunity to be heard, as well as to provide notice to appropriate federal and state officials as

required by the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332(d), 1453, and

1711-1715. The submitted proposed preliminary approval order sets forth the proposed schedule

of events which are subject to the Court's approval. For the reasons set forth above, the Settlement

meets the standard for preliminary approval under Rule 23.

Dated: September 9, 2024                        Respectfully submitted,

                                               **CAPOZZI ADLER, P.C.**

                                               */s/ Mark K. Gyandoh*
                                               Mark K. Gyandoh, Esquire
                                               James A. Maro, Esquire
                                               312 Old Lancaster Road

Merion Station, PA 19066
Telephone: (610) 890-0200
Facsimile: (717) 233-4101
Email: markg@capozziadler.com
        jamesm@capozziadler.com

**MUHIC LAW LLC**
Peter A. Muhic, Esquire
923 Haddonfield Road, Ste. 300
Cherry Hill, NJ 08002
Telephone: (856) 324-8252
Facsimile: (717) 233-4101
Email: peter@muhiclaw.com

*Counsel for Plaintiffs and Class Counsel for the
Class*

16

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 9, 2024, a true and correct copy of the foregoing document was filed with the Court utilizing its ECF system, which will send notice of such filing to all counsel of record.

By:  <u>*Mark K. Gyandoh*</u>
       Mark K. Gyandoh, Esq.

17